## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Jaime Alfonso Velasquez Vasquez,**<br>                    *Petitioner*.<br><br>        v.<br><br>**JOSEPH FREDEN,**<br>        in his official capacity as Deputy<br>        Field Office Director, Buffalo<br>        Field Office, U.S. Immigration &<br>        Customs Enforcement;<br><br>**TAMMY MARICH,**<br>        In her official capacity as Field<br>        Office Director, Buffalo Field Office,<br>        U.S. Immigration & Customs<br>        Enforcement;<br><br>**TODD LYONS,**<br>        In his official capacity as Acting<br>        Director, U.S. Immigration and<br>        Customs Enforcement,<br><br>**KRISTI NOEM,**<br>        In her official capacity as Secretary<br>        of Homeland Security,<br><br><br>                    *Respondent.* | **Civil Action No. 25-cv-1191**<br><br><br>**Immigration No. A240072676<br>A201843713 (USCIS)**<br><br><br>**VERIFIED PETITION FOR<br>WRIT OF HABEAS CORPUS<br>AND INCORPORATED<br>MEMORANDUM OF LAW**<br><br><br>***Oral Argument Requested*** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

THE PARTIES.......................................................................................................2

CUSTODY ...........................................................................................................3

JURISDICTION & VENUE ......................................................................................3

    I.   SUBJECT MATTER JURISDICTION ................................................... 3

    II.  PERSONAL JURISDICTION.............................................................. 3

    III. VENUE ....................................................................................... 4

LEGAL FRAMEWORK WITH RESPECT TO SPECIAL IMMIGRANT JUVENILES ....4

LEGAL FRAMEWORK WITH RESPECT TO BOND.....................................................8

FACTS ..............................................................................................................12

CLAIMS FOR RELIEF .........................................................................................14

COUNT 1: VIOLATION OF THE INA ....................................................................14

COUNT 2: VIOLATION OF DUE PROCESS ............................................................15

COUNT 3: VIOLATION OF THE APA ....................................................................15

PRAYER FOR RELIEF.........................................................................................16

VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT
TO 28 U.S.C. § 2242.........................................................................................19

## PRELIMINARY STATEMENT

1.      Mr. Jaime Alfonso Velasquez Vasquez ("Jaime" or "Mr. Velasquez") is a 20 year old male, native and citizen of El Salvador. He was born on April 20, 2005. As an infant, he was brought by plane to California where he entered the country on 10/27/06. He was reunited with his mother, but as a teenager, he suffered neglect and was placed in foster care. On November 20, 2024, an I-360 Petition for Special Immigration Juvenile Status (SIJS) was filed by Jaime. That petition was approved on March 21, 2025. On that same date, USCIS granted Jaime a period of deferred action for four (4) years. Despite this grant of deferred action, ICE detained Jaime on November 4, 2025 and is currently holding him at the Buffalo Federal Detention Facility (BFDF) in Batavia, NY. He has an immigration court hearing scheduled on November 17, 2025. Upon information and belief, Jaime has no criminal record.

2.      The grant of deferred action that Petitioner was given is meant to protect him from detention and removal. This grant has not been revoked, yet Petitioner was illegally detained and is being illegally held at BFDF with no individualized bond hearing.

3.      DHS and EOIR each have nationwide policies mandating the detention of all persons who entered without admission or parole, regardless of whether that person was apprehended upon arrival. Most recently, on September 5, 2025, in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), the Board of Immigration Appeals (BIA) held that all persons who have entered the United States without admission or parole are now subject to mandatory detention under § 1225(b)(2)(A). This legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

4.      This systemic misclassification of people arrested inside the United States is in clear violation of the law. These people are generally subject to the detention provisions of 8

U.S.C. § 1226, which usually allows for release on bond and conditions during the pendency of immigration proceedings. It has been this way for decades. DHS and DOJ are now misclassifying these people as being subject to 8 U.S.C. § 1225, which does not allow for release on bond. This misclassification is contrary to almost 30 years of settled law and practice, and it is unlawfully premised solely upon the manner in which the person initially entered the country— in some cases, decades ago.

5.      Accordingly, Petitioner seeks a writ of habeas corpus. Petitioner requests an order requiring his immediate release, or in the alternative, an order directing Respondents to provide a bond hearing under § 1226(a) within seven days.

## THE PARTIES

6.      Petitioner Jaime Alfonso Velasquez Vasquez is detained in the custody of ICE. He is being held at the Buffalo Federal Detention Facility in Batavia, New York. His custody and governmental actions related to his removal are likewise controlled by the Buffalo Field office, which is located within this judicial district.

7.      Respondent Joseph Freden is the Buffalo, NY Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement. He is the local ICE official who has authority over the Petitioner. *See Vasquez v. Reno*, 233 F,3d 688, 690 (lst Cir. 2000), cert. denied, 122 S. Ct. 43 (2001). Respondent Freden's office is at 250 Delaware Avenue, Floor 7, Buffalo, NY 14202 and/or at the Buffalo Federal Detention Facility, 4250 Federal Drive, Batavia, NY 14020.

8.      Petitioner's custody within this judicial district and the governmental actions related to his potential removal from the district are likewise controlled by Respondents Marich, Lyons and Noem.

## CUSTODY

9.      Petitioner is in the physical custody of Respondents and U.S. Immigration and Customs Enforcement ("ICE") at the BFDF.  The Deportation Officer responsible for his case is stationed at the Buffalo Federal Detention Facility ("BFDF"). The Petitioner is under the direct care, custody and control of Respondents and their agents.

## JURISDICTION & VENUE

### I.    SUBJECT MATTER JURISDICTION

10.      This action arises under the Constitution of the United States, and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104 - 208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.

11.      This Court has jurisdiction under 28 U.S.C, § 2241, Art. I, § 9, el. 2 of the Constitution of the United States (the Suspension Clause) and 28 U.S.C. § 1331, as Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 702, the All Writs Act, 28 U.S.C. § 1651 and the Court's equitable habeas authority.

### II.   PERSONAL JURISDICTION

12.      This Court has personal jurisdiction over Petitioner's immediate custodian (who is physically within the district).[1]

---

[1]  Petitioner asserts this Court has personal jurisdiction over the additional Respondents, however, in the interests of brevity, the Petitioner will brief this if (1) any governmental acts challenged herein are found to relate to those Respondents (instead of the immediate custodian) and (2) the Government seeks to argue against personal jurisdiction.

III.    <u>VENUE</u>

13.    Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S.484, 493-500 (1973), venue lies in the United States District Court for the Western District of New York, the judicial district in which Petitioner is being detained. Petitioner is being detained at the BFDF and his detention falls under the jurisdiction of the ICE Field Office of Buffalo, New York, which encompasses the area where Petitioner is being detained, pursuant to 28 U.S.C. § 1391.

**LEGAL FRAMEWORK WITH RESPECT TO SPECIAL IMMIGRANT JUVENILES**

14.    Congress created SIJS to protect vulnerable immigrant children and provide them a pathway to citizenship. Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990) (amending various sections of the INA); Special Immigrant Status, 58 Fed. Reg. 42843, 43844 (Aug. 12, 1993) ("This rule alleviates hardships experienced by some dependents of United States juvenile courts by providing qualified [noncitizens] with the opportunity to apply for special immigrant classification and lawful permanent resident status, with [the] possibility of becoming citizens of the United States in the future."). Since 1990, Congress has amended the INA multiple times to expand the protections of SIJS, most recently in 2008, through the TVPRA, Pub. L. 110-457, § 235(d), 122 Stat. 5044 (2008).

15.    To be granted SIJS, youths must first "satisfy[] a set of rigorous, congressionally defined eligibility criteria." *Osorio-Martinez v. U.S. Att'y Gen.*, 893 F.3d 153, 163 (3d Cir. 2018). Specifically, the INA provides that those eligible for SIJS designation, as relevant here, are noncitizen youth who are present in the United States; who have been declared dependent on a state juvenile court; who cannot be reunified with one or more parents because of abuse, neglect, or abandonment; and for whom it has been determined that it is not in their best interest to return to their country of origin. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c).

16.     Crucially, a noncitizen youth is eligible for SIJS only if he is "present in the United States." 8 U.S.C. § 1101(a)(27)(J). The application process involves submitting a Form I-360 Petition to USCIS, along with the predicate state court order and other supporting evidence. See 8 C.F.R. § 204.11(b). USCIS then considers the application and supporting documentation to determine whether to use its statutory "consent function" to approve the petition. *See* 8 U.S.C. § 1101(a)(27)(J)(iii).

17.     The core purpose of SIJS is to confer on vulnerable youth the right to seek Lawful Permanent Resident status while remaining in the United States. Although SIJS renders youth eligible to apply for adjustment, they can only do so when a visa is immediately available to them. 8 U.S.C. § 1255(h). However, there is an annual limit on visas available to SIJS beneficiaries. 8 U.S.C. § 1153(b)(4). And since 2016, the number of SIJS beneficiaries has surpassed the supply of available visas for most countries, leaving what has been estimated to be more than 100,000 young people in a backlog, waiting to apply for a green card.

18.     Despite the immediate unavailability of visas, waitlisted SIJS beneficiaries are the same vulnerable young people that the SIJS statute was designed to protect. The fact that no visa is currently available because a numerical limit has been reached changes nothing about their eligibility determination by USCIS, or Congress's intent that they be afforded a pathway to LPR status and, eventually, citizenship. These are the same individuals whom state courts have determined cannot safely be reunited with their parent(s) or returned to their home country.

19.     Taken together, the structure of the SIJS program—including the requirement that recipients remain in the United States to move forward in the process, the grant of parole for the purpose of adjustment, and the waiver of grounds of inadmissibility and removability—evinces Congress' intent that SIJS recipients remain safely in the United States until they can adjust to

become LPRs. And given that they are only "a hair's breadth from being able to adjust their status" and have a "substantial legal relationship" with the United States, these individuals have been recognized as enjoying meaningful constitutional due process rights. *Osorio*, 893 F. 3d at 173-75.

20.    Nonetheless, DHS has taken the position that SIJS youth in the visa backlog remain subject to removal, including simply for their lack of lawful immigration status in the United States, while they wait for the ability to apply for a green card. So in March 2022, to address the harms being caused by the SIJS visa backlog, USCIS announced that all young people granted SIJS would also be considered for a discretionary grant of deferred action, meaning that they would be protected from deportation while waiting for a visa to become available. In enacting this policy, USCIS acknowledged that "Congress likely did not envision that SIJ petitioners would have to wait years before a visa became available. . .." USCIS Policy Alert, PA-2022-10, "Special Immigrant Juvenile Classification and Deferred Action" (March 7, 2022), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf (hereinafter "2022 USCIS Policy Alert").

21.    When determining whether a SIJS youth was eligible for deferred action, USCIS assessed, "based on the totality of the evidence, whether [he] warrants a favorable exercise of discretion." 2022 USCIS Policy Alert at n.6; see also USCIS Policy Manual as of April 18, 2025, vol. 6, pt. J, ch. 4, https://web.archive.org/web/20250418205752/https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4 ("USCIS weighs all relevant positive and negative factors that apply to the person's case. USCIS may generally grant deferred action if, based on the totality of the facts and circumstances of the case, the positive factors outweigh the negative factors.").

22.     Specifically, "[o]ne particularly strong positive factor that weighs heavily in favor of granting deferred action is that the person has an approved [SIJS petition] and will be eligible to apply for adjustment of status as soon as an immigrant visa number becomes available," id., while "[i]f background and security checks indicate that an SIJ-classified individual may be subject to an inadmissibility ground … that cannot be waived and that would make them ineligible for SIJ-based adjustment of status, this would generally be a strong negative factor weighing against the favorable exercise of discretion," as would "serious unresolved criminal charge(s)," Exh. 14, USCIS-ICE Memo at 2.

23.     Deferred action is an act of prosecutorial discretion that defers efforts to deport a noncitizen from the United States for a certain period of time. USCIS Policy Manual as of April 18, 2025, vol. 6, pt. J, ch. 4, https://web.archive.org/web/20250418205752/ https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4. In the case of SIJS recipients awaiting visas, USCIS granted deferred action for a period of four years. 2022 USCIS Policy Alert at 2. Individuals granted deferred action are also eligible to apply for employment authorization under 8 C.F.R. § 274a.12(c)(14). Id.

24.     In June 2025, USCIS rescinded the SIJS deferred action policy, deciding to no longer consider granting deferred action to SIJS youth waiting to apply for a green card.7 However, this policy change had no impact on SIJS beneficiaries, like Petitioner, who had already received deferred action. See USCIS Policy Alert, PA-2025-07, "Special Immigrant Juvenile Classification and Deferred Action" 2 (June 6, 2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf (hereinafter "2025 USCIS Policy Alert"). Indeed, USCIS explicitly

provided that noncitizens "with current deferred action based on their SIJ classification will generally retain this deferred action . . . until the current validity periods expire." Id.

25.    Pursuant to USCIS's internal policies, only USCIS may terminate a SIJS beneficiary's deferred action before it expires, and only if the agency engages in an individualized review and determines, for example, that a favorable exercise of discretion is no longer warranted; the individual's SIJS petition was approved in error and is revoked; or the prior deferred action was granted in error. USCIS Policy Manual, vol. 6, part J, ch. 4, https://www.uscis.gov/policy- manual/volume-6-part-j-chapter-4 ; see also Exh. 14, USCIS-ICE Memo at 2 (confirming that "USCIS has the sole authority to grant and terminate deferred action for noncitizens with SIJ classification" and that "USCIS may terminate deferred action if the SIJ-classified individual was not eligible at the time of the initial grant of deferred action, the SIJ Form I-360 is revoked, or if they are no longer eligible based on new information, including new information about criminal activity that impacts the discretionary determination to grant SIJ deferred action").

### LEGAL FRAMEWORK WITH RESPECT TO BOND

26.    The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

27.    First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an Immigration Judge (IJ). See 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, see 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, see 8 U.S.C. § 1226(c).

28.     Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

29.     Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, see 8 U.S.C. § 1231(a)–(b).

30.     This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

31.     The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226 was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

32.     Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without admission or parole were not considered detained under § 1225 and that they were instead detained under § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

33.     Thus, in the decades that followed, most people who entered without admission or parole and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

34.     On July 8, 2025, ICE, "in coordination with" the Department of Justice, announced a new policy that rejected this well-established understanding of the statutory framework and reversed decades of practice.

35.     The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without admission or parole shall now be deemed "applicants for admission" under 8 U.S.C. § 1225, and therefore are subject to mandatory detention under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and even decades.

36.     On September 5, 2025, the BIA adopted this same position in *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the United States without admission or parole are considered applicants for admission who are seeking admission and are ineligible for IJ bond hearings.

37.     Dozens of federal courts have rejected Respondents' new interpretation of the INA's detention authorities. See, e.g., *Alvarez Ortiz v. Freden*, No. 25-CV-960-LJV (W.D.N.Y. November 4, 2025); *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-

cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); Jose J.O.E. v. Bondi, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); see also, e.g., *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

38.    Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

39.    Subsection 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

40.     The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without admission or parole. See 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F. Supp. 3d at 1257 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)).

41.     Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

42.     By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

43.     Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who has already entered and was residing in the United States at the time he was apprehended.

## FACTS

44.     Mr. Jaime Alfonso Velasquez Vasquez ("Jaime" or "Mr. Velasquez") is a 20 year old male, native and citizen of El Salvador. He was born on April 20, 2005. Upon information

and belief, he was brought by plane to California where he entered the country on 10/27/06. It is unclear with whom he travelled, or even what name was on the passport he used. Because he was an infant at the time and is estranged from his mother, no evidence of legal entry has surfaced. It is believed that his mother entered without inspection a short time later, and mother and son were reunited. They eventually moved to Rockland County, New York. Jaime, mom and three siblings lived together with numerous extended family members in Rockland County until Child Protective Services became involved with the family. On or about 2020 the family was moved into the first of two shelters. In 2022, the children were removed from the mother, and neglect proceedings were initiated. Jaime was represented by Legal Aid Attorney, Lillian Arthur. Eventually Jaime was placed in foster care.

45.     On November 20, 2024, an I-360 Petition for Special Immigration Juvenile Status (SIJS) was filed by Jaime. That petition was approved on March 21, 2025. On that same date, USCIS granted Jaime a period of deferred action for four (4) years.

46.     On or about the morning of November 4, 2025, Jaime left his house at around 7 AM in an orange van to go to a job site in Webster, New York. Later that morning at around 9:30 AM he returned home in a white truck to pick up some tools. Jaime did not see ICE at the house but says that a black car followed him when he left. When he exited the highway, he was stopped just a short distance from the job site where another grey car was waiting. An agent asked him about his legal status and he told them that he was undocumented but had an approved SIJ with deferred action. The agent asked Jaime for ID. When he ran the ID he said he could not find anything on Jaime. He took him in and ran his biometrics. The officer said he still could not find anything on him so they arrested him. Jaime says there was no other reason for them to have stopped or arrested him.

47.     Jaime is detained at the Buffalo Federal Detention Facility (BFDF) in Batavia, NY. He has an immigration court hearing scheduled on November 17, 2025.

48.     Upon information and belief, Jaime has no criminal record.

49.     Despite having an approved SIJ petition, Jaime cannot adjust status at this time because a visa number is currently not available. He will need to wait several years for his "priority date" to become current before he can adjust status. If he were not detained, the Immigration Judge could place the matter on the "status docket" or terminate the matter to allow him to remain in the United States pending availability of a visa number. However, if he remains detained, the Immigration Judge will order him deported unless he can establish eligibility for some other form of relief.

50.     If Jaime is deported, he will not be able to return to the United States despite being the recipient of an approved SIJ petition.

51.     Without relief from this Court, Jaime faces the prospect of being detained for a prolonged period of time, ordered removed and subsequently deported.

## CLAIMS FOR RELIEF
## COUNT 1: VIOLATION OF THE INA

52.     Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein, and does so for all additional counts.

53.     The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by

Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

54.    The application of § 1225(b)(2) to Petitioners unlawfully mandates their continued detention and violates the INA.


## COUNT 2: VIOLATION OF DUE PROCESS

55.    Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein, and does so for all additional counts.

56.    The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

57.    Petitioner has a fundamental interest in liberty and being free from official restraint.

58.    The government's arbitrary detention of Petitioner, who has a grant of deferred action, violates his right to due process.

59.    The government's detention of Petitioner without a bond redetermination hearing to determine whether they are a flight risk or danger to others violates his right to due process.

## COUNT 3: VIOLATION OF THE APA

60.    Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein, and does so for all additional counts.

61.    Under the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The reviewing court "shall... hold unlawful and set aside agency action, findings, and conclusions found to be-(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

62.    Respondents' unilateral decision to arrest and detain Petitioner even though he has an approved SIJS petition and deferred action was not in accordance with the Constitution, the INA, and its implementing regulations, as explained above. It should therefore be set aside under the APA as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" 5 U.S.C. §706(2)(A) and "in excess of statutory jurisdiction, authority or limitations, or short of statutory right," 5 U.S.C. §706(2)(C).

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that the Court grant the following relief:

(1)    Assume jurisdiction over this matter;

(2)    Enjoin the Respondents from transferring Petitioner away from the jurisdiction of this District pending these proceedings;

(3)    Declare that Petitioner's arrest and detention violates the Due Process Clause of the Fifth Amendment; the Fourth Amendment; and the INA and implementing regulations;

(4)    Issue a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody without restraints on his liberty beyond those that existed prior to his unlawful detention;

(5)    Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

(6)    Order that Respondents cannot re-detain Petitioner without a pre-deprivation hearing before this Court where the government bears the burden of justifying re-detention by clear and convincing evidence;

(7)    Order that Respondents cannot terminate Petitioner's deferred action based on his detention to pursue removal for lack of lawful immigration status;

(8)    Order that Respondents cannot terminate Petitioner's deferred action without first providing reasonable notice of intent to terminate, a reasoned explanation, and an opportunity to submit arguments and evidence in response;

(9)    Issue a writ of habeas corpus clarifying that the statutory basis for Petitioner's detention is 8 U.S.C. § 1226(a) and that 8 U.S.C. § 1225(b)(2)(A) does not apply to Petitioner;

(10)   In the alternative, Issue a writ of habeas corpus requiring that Respondents release Petitioner unless Respondents provides Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within 14 days;

(11)   Declare ICE's July 8 policy and the BIA's *Matter of Yajure Hurtado* decisions unlawful;

(12)   Award Petitioners attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

(13) Fashion such additional relief as is necessary and appropriate, including declaratory relief or other interim relief necessary to vindicate Petitioners' rights under U.S. and international law.

Dated:  November 14, 2025                      /s/ Matthew K. Borowski

_____

Matthew K. Borowski
*Attorney for Petitioner*
4343 Union Road,
Buffalo NY 14225
E-mail: matthew@borowskilaw.com
Tel: 716-330-1503

**VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have discussed with the Petitioner and/or co-counsel the events described in this Petition. On the basis of those discussions, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated:  November 14, 2025                          /s/ Matthew K. Borowski
                                                                   _____
                                                                   Matthew K. Borowski
                                                                   *Attorney for Petitioner*
                                                                   4343 Union Road,
                                                                   Buffalo NY 14225
                                                                   E-mail: matthew@borowskilaw.com
                                                                   Tel: 716-330-1503

✎JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Jaime Alfonso Velasquez Vasquez

**DEFENDANTS**
JOSEPH FREDEN, STEVEN KURZDORFER, TODD LYONS, KRISTI NOEM

**(b)** County of Residence of First Listed Plaintiff   Genesee
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Matthew K. Borowski, Borowski Witmer Immigration Lawyers, 4343 Union Road, Buffalo, NY 14225

Attorneys (If Known)
USAO WDNY

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       (U.S. Government Not a Party)

☒ 2  U.S. Government
       Defendant

☐ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☒ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     another district
     (specify)

☐ 6 Multidistrict
     Litigation

☐ 7 Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 2241
Brief description of cause:
☐ Habeas corpus petition

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE

DOCKET NUMBER

DATE
11/14/2025

SIGNATURE OF ATTORNEY OF RECORD
/s/ Matthew Borowski

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**.     Example:     U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**



## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number MSC2590157881 | | Case Type I360 - PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT |
|---|---|---|
| Received Date 11/20/2024 | Priority Date 11/20/2024 | Petitioner  A201 843 713 VELASQUEZ VASQUEZ, JAIME ALFONSO |
| Notice Date 03/31/2025 | Page 1 of 1 | Beneficiary  A201 843 713 VELASQUEZ VASQUEZ, JAIME ALFONSO |

JAIME ALFONSO VELASQUEZ VASQUEZ
c/o A KELLOGG CTR FOR SAFETY AND CHANG
9 JOHNSONS LANE
NEW CITY NY 10956

Notice Type: Approval Notice
Class: SL6
Section: Special Immigrant-Juvenile

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

**What the Official Notice Said**

I-797 Approval Notice for **Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant** with Deferred Action.

USCIS has approved the above petition.

**Grant of Deferred Action:**

Your **Form I-360** petition has been approved, but you do not yet have a visa available to file an application for adjustment of status. USCIS has determined that you warrant a favorable exercise of discretion to receive deferred action. As a result, you have been placed in deferred action and you may be issued an employment authorization document. Deferred action is an act of administrative convenience to the government which gives some cases lower priority for removal from the United States for a specified period of time.

Your grant of deferred action will remain in effect for a period of four years from the date of this notice unless terminated earlier by USCIS.

Pursuant to 8 CFR Sec. 274a.12(c)(14), a noncitizen with approved deferred action is eligible to apply for employment authorization with the appropriate fee. If you would like to apply for employment authorization, you must properly file Form I-765, Application for Employment Authorization, and enter eligibility category (c)(14). You will receive separate correspondence regarding the adjudication of your Form I-765 once it is filed.

If you are represented by an attorney, all further correspondence should be accompanied by Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative.

USCIS will notify you separately about any other cases you have filed.

**This form is not a visa, nor may you use it in place of a visa.**

**This form does not constitute employment authorization, nor may you use it in place of an Employment Authorization Document.**

Please see the additional information on the back. You will be notified separately about any other cases you filed.
USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

National Benefits Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 648003
Lee's Summit MO  64002



**USCIS Contact Center: www.uscis.gov/contactcenter**

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.        Form I-797C  10/13/21